The next case on our docket, which is United States of America v. Lawrence Williams. And for the appellant, we have Houston Goddard, I think. And for the appellee, United States, we've got Michael Ellis. Nope, I have those both correct. So let's proceed with the appellant's argument. And this is set for 10 minutes per side. So let me know if you wanted to make a rebuttal argument, and then watch the clock. Thank you, and good afternoon, your honors. Houston Goddard for Mr. Williams. I would ask to reserve three minutes for rebuttal. I'll try to remind you, but do watch the clock, please. Absolutely, thank you, your honor. The threshold issue before the court today is whether Valencia Mendoza applies in the supervised release context generally. The holding of Valencia Mendoza is that a Washington state crime is punishable by more than one year, only where the particular defendant's actual exposure exceeds one year, regardless of the general statutory maximum for whatever the crime may be. Now, under 7B1.1, when a supervisee is violated for committing a new crime, the district court must make a finding on whether that crime was punishable by more than one year in order to determine the grade of the violation and the applicable guidelines. So it would make sense when that new crime is a Washington state crime to apply the logic and holding of Valencia Mendoza in determining whether that crime was punishable by more than one year. The government appears to agree, but only so long as there is an actual Washington state conviction. So the question becomes whether this court should carve out an exception to Valencia Mendoza and introduce new rules for supervisees who are violated for committing a Washington state crime that they have not actually been convicted of in Washington state court. And this court has answered that question in Denton. The defendant in Denton was in a very similar situation to Mr. Williams. He was on federal supervision. He was violated for committing a state crime, in his case, a California state crime. And like Mr. Williams, it was a crime that might have been punishable by more than one year or it might not have been, depending on how his prosecution would have played out in state court. Now, the district court could not have known that because the case did not proceed in state court. There was no conviction. There was no judgment and sentence. And this court could have said, well, we don't have a conviction. We don't have a judgment and sentence. We're going to look to the maximum sentence that Mr. Denton could have faced, which was more than a year. But that's not what this court said. What this court said was the district court needed to go back and go and apply California state sentencing law to determine what Mr. Denton would have faced had he been prosecuted and convicted in California state court. And Mr. Williams is asking the court to just hold the same for him, that the district court should work through Washington state law, just as it did California state law, to determine what Mr. Williams would have faced had he been charged and convicted in state court. Now, the government's justification for this proposed carve-out to Valencia Mendoza is essentially that it's just too much work for the federal district court to work through Washington state sentencing law. As I've noted, that's precisely what this court ordered with California state law. And I think it's notable that any time a supervisee is violated for a new law violation and there is no state conviction, the district court is necessarily going to have to work through state law just to establish that there was a violation. The district court is going to have to look at the elements of the state crime, perhaps any controlling state precedent interpreting those elements, and determine whether the supervisee's conduct constituted a crime under state law. And what the government is asking is essentially, well, let's have the district court work through state law to establish the violation, but then stop and just look to the general statutory maximum, rather than continuing to work through state law to determine what punishment the supervisee actually would have faced. Let me ask in practical terms, do I understand correctly that you're urging us to remand? And at that point, the district court should do that first part of the state law analysis you described. But I take it would also be free to go to the second part, which is to say, OK, if I determine there's a violation under state law, I would apply state sentencing law as the state court could apply it, but could reach the conclusion that in this instance, the circumstances would justify a state court of sentencing to a term of longer than one year. And if the district court reached that conclusion, it could come back and do the same thing that it did the last time, albeit taking a different route. Do I understand correctly the position you've offered? Yes, Your Honor, that is precisely correct. The district court did engage in the first half of that analysis. There was a two-hour hearing. The government called four witnesses and proved up under state law the violation itself. That was done, and Mr. Williams is not appealing or contesting any portion of that. The issue is that the district court did not do the second portion, which is determining what Mr. Williams would have faced under state law. And Your Honor is exactly correct that on remand, the district court could find that for, based on Mr. Williams' criminal history or aggravating factors, that perhaps his range would have been over a year, in which case it would be a grade B violation. That is a factual determination for the district court to make, and it is a determination the district court did not make. Your brief has informed us that since the entry of the revocation judgment, he's been charged, I guess indicted with a federal offense. I couldn't tell if it arose, if this is a charge arising out of the same factual episode that was the subject of the potential state charges. But whether it is or not, I guess my question is, would the district court at that point be able to consider this as a potential basis for revocation and as a potential basis for sentencing following revocation? Yes, Your Honor, the district court would be able to consider that if it was alleged as a violation, which it has not been. Mr. Williams, to update the court, at the time of the briefing, Mr. Williams had been indicted federally for wire fraud, stemming from the same facts at issue for the state charge. It was not actually a state charge, but a state violation. He has since pled guilty and is awaiting sentencing. If he were violated for that, then that would, I believe, be a grade B violation. But it has not been alleged, and it is not before the district court or this court. But the number you identify, the case number, it looks like it's in front of Judge Rice as well, so it's not like he's going to be unaware of it. What I'm really getting to, and it may be more curiosity than speaking to your legal argument, in the end, is there going to be any different result here? There may not be, Your Honor. There may not be. But the legal principles remain that there could be another defendant in the future, and, of course, this court's decision would influence that future case where someone might be in a different factual situation than Mr. Williams, who is just facing the one state charge, and the evidence could be very strong that it would be a 0-6 or 6-12 month range at the Washington state level, which would, of course, be a grade C violation. And if this court followed the government's proposal, the district court would just look to the general statutory maximum, and it would be a grade A or a grade B violation. I'm not in any way trying to criticize the point you're making. I understand the point. I just want to try to satisfy myself that my handle on this case, I haven't missed something, and I appreciate your candid responses. Okay, counsel. Understood. Judge Gould, if I may interject, please. You're under three minutes left. Do you want to make rebuttal? Yes, Your Honor. I would reserve the remainder of my time. Thank you very much. And we'll increase the time to three minutes. Proceed now with the government's argument, please. Thank you, Your Honors. Good afternoon, and may it please the Court. My name is Michael Ellis, and I'm an assistant United States attorney for the Eastern District of Washington based in Spokane. This Court should decline to extend its holdings in Valencia, Mendoza, and McAdory to Sentencing Guideline 7B.1.1. The phrase, punishable by a term of imprisonment exceeding one year, is materially different as used in 7B.1.1 than 2L.1.2 and 18 U.S.C. 922 G.1, the provisions at issue in Valencia, Mendoza, and McAdory, and that's primarily because 7B.1.1 concerns conduct, while those two provisions concern convictions. There are a couple of reasons why this Court should treat 7B.1.1 differently than 2L.1.2 and 18 U.S.C. 922 G.1. The first is when looking at Valencia, Mendoza, and McAdory, the Court focused on how the district court could simply turn to those individuals' Washington State court judgments to determine, one, what that individual's Washington State mandatory guideline range was when facing that prior conviction, and two, whether the sentencing court or the jury found that any of the Washington State listed 30 aggravating factors were present, which would have allowed that sentencing court to sentence the individual beyond the mandatory sentencing guideline. In a situation like Mr. Williams's, where the Washington State criminal violation was never charged, let alone adjudicated or a conviction was obtained, there is no sentencing document. There is no guideline range that's been calculated. No one has determined whether or not any of the 30 aggravating factors might apply to allow a sentence beyond the guideline range up to the statutory maximum. Mr. Ellis, I mean, I take your point that there's a practical difference there, and maybe it's more difficult when you don't have a conviction, but I guess I'm not sure how we get to a different result given that the text is the same and what one refers to an offense punishable by imprisonment and the other refers to conduct constituting an offense punishable by imprisonment. I mean, how can it be punishable by imprisonment for more than a year in one context but not the other? So in Valencia-Mendoza and McAdory, the district court, when looking at the sentencing document, knew, for example, in Valencia-Mendoza, that Mr. Valencia-Mendoza was looking at a 0 to 6 range and that no aggravating factors had been found. So as I think Valencia-Mendoza held, there was no chance that he was going to get sentenced to anything above six months in Washington State court. Here, a Washington State court, if Mr. Williams had been charged with theft from a vulnerable adult in the second degree, could have applied an aggravating factor. There are a number that potentially are applicable, vulnerable victim, homelessness, et cetera. Then you just have to prove the aggravating factor, and the district court has to find it. I mean, why isn't that the answer to that problem? And the problem comes primarily from RCW-994A-535-2A, which is one of the aggravating factors that can be found by the court alone at sentencing, and that is a stipulation, essentially, by the parties in Washington State court that an above-guideline sentence is appropriate. That aggravating factor is potentially applicable to every single Washington State felony charge. The parties could, in any felony prosecution, stipulate, for whatever reason they choose, that an above-guideline range is appropriate. While, yes, a district court could evaluate whether, say, the vulnerable victim enhancement aggravator is applicable, a district court can never predict, can never be able to accurately say, whether a particular defendant in Washington State would ultimately have stipulated to an above-guideline range. So one of the aggravators which is applicable to every potential Washington State felony prosecution is also the one that is completely unpredictable by a district court trying to evaluate whether any of these aggravators are applicable to a supervisee under 7B1.1. I have to confess I'm not familiar with that aspect of Washington criminal practice, but why would anyone ever stipulate to a, is that as part of an agreement to get other offenses dismissed? In my experience, Your Honor, it is typically a charge bargaining idea where, say, a greater charge is dismissed in exchange for the defendant agreeing to a greater sentence on a lower, on maybe a less serious felony. But it does happen and it is in the statute and it is a permissible grounds for a Washington State sentencing court to exceed the mandatory guideline range in any Washington State felony case. Well, in the case that we're talking about here where there hasn't actually been a prosecution, then you would presumably have the potential charge that gets dismissed as part of the bargain still pending. And so the district court would have the opportunity to examine those charges and consider the possibility of a conviction on those more serious charges and consider the possibility that aggravated circumstances could be found based on any of the charges that potentially were pending. I mean, I understand it's all sort of hypothetical, but I'm not sure that the alternative suggested by defendant is so unrealistic or ties the district court's hands from considering factors that ought to be considered. If the district court is allowed to look and say, well, what do I think would happen if the charges proceeded in state court, I don't see anything that rules out the possibility of the court deciding there were aggravating circumstances that justify a higher state sentence. But the alternative you seem to be offering is that, well, if there's no state prosecution, then you just revert to the statutory maximum. And we know the statutory maximum doesn't often apply in federal prosecutions because that's the world that the five of us live in all the time. And I suspect they don't ordinarily apply in state prosecutions either. So why do we enter a hypothetical world that doesn't really exist? And your honor, and that goes back to the word punishable. And so McAdory described Valencia Mendoza as defining punishable by as the sentence to which the defendant is actually exposed to under Washington state sentencing scheme. So exposed to the individual is as in federal court. Anyone is always exposed to that federal statutory maximum. And it's the same with someone in Mr. Williams position in state court. Mr. Williams, procedurally, as he was before the district court, was potentially exposed to those relevant aggravating circumstances. And as he was exposed to those, he was therefore punishable by those in this hypothetical world where, of course, he was naturally charged. And as exposed to. Couldn't you say the same thing in Denton, though? I mean, somebody prosecuted for or facing potential prosecution for a California wobbler offense is exposed to the felony punishment. But we said you have to look at what's realistically likely to happen. And I think Denton is distinguishable because Denton relies on. So in Denton, as you're as the court's aware, it determines whether or not an offense is under this wobbler provision, a misdemeanor or a felony. And Denton goes to the actual conduct language in 71.1 application note. And as this court noted, what the district court has to look at in Denton, when evaluating uncharged California wobbler statutes, is essentially the facts of the indent in the domestic violence assault. Looking at, say, footnote 12 in Denton, where this court actually went through and listed out a number of those possible considerations. It primarily concerns the actual facts, the actual the actual conduct that Mr. Denton engaged in in that domestic assault. And so in Denton, it really did go straight to the actual conduct because it's the facts of the underlying allegation that determined whether or not a California sentencing judge and the indent in a district court would determine the offense to have been a misdemeanor or a felony here. The facts of what Mr. Williams did don't change. He committed theft from a vulnerable adult in the second degree. There is no mitigating facts, better or worse version of that. Whatever it is, it is theft from a vulnerable adult in the second degree, a class C felony under Washington state law. The only reason that the defense is arguing that it may not be punishable by a term of imprisonment exceeding one year is because his offender level, his procedural criminal history that would be calculated only at sentencing is inapplicable or is is it changes the game. And that has nothing to do with his actual conduct of stealing from this vulnerable person. I would make one final point, and that is in reply. And then today the appellant tries to impart a concession on the part of the government that 7B1.1, where there is a conviction, is subject to Valencia Mendoza. The government does not make that concession. The government did not discuss that issue in the briefing because it's not relevant to Mr. Williams's situation only regarding uncharged conduct. And as 7B1.1 concerns the actual conduct, not the conviction or the facts of the actual conviction, it's the government's contention that Valencia Mendoza and McAdory do not apply to 7B1.1 at all because of the potential for aggravating factors to apply. And if the court doesn't have any other further questions for me, I'll finish. Thank you. Thank you, counsel. Any questions from Judge Kliff? Hearing no questions, we thank you for your argument. And Mr. Mr. Gardner, Mr. Gardner. Thank you, Your Honor. Thank you, Your Honor. I would respond first to the government's argument that Valencia Mendoza is just entirely inapplicable in the supervised release conduct. As Judge Miller noted, the language in 7B1.1 is almost identical to the language in 2L1.2 and 922G1, the provisions at issue in Valencia Mendoza and McAdory. I don't see any logical reason to think that the exact same language punishable by would have a different meaning in 7B1.1. Turning to Mr. Ellis' argument that Denton is distinguishable because, as I understand it, the government's position is that California's sentencing scheme is based on actual conduct, the phrase used in the application note, while Washington's is not. I would disagree with that. The phrase actual conduct is meant to expand the scope of potential violations beyond those charged or convictions. It is not meant as a limitation on what the district court can look to. And regardless, Washington's guidelines are based on actual conduct. Mr. Ellis talks about it as though it is only Mr. Williams' criminal history at issue. That's not correct. That is one portion. There is also the offense itself, the seriousness level ascribed to that offense. That is his actual conduct. And then there are the potential aggravators, which we've been discussing. Those are, of course, based on actual conduct. And I would note Mr. Ellis correctly notes there are 30 potential aggravators under Washington state law. They are just factual, fairly unremarkable determinations for a court to make, such as if it was a burglary, was anyone in the home? If it was a rape of a child, did a pregnancy result? These are not difficult, complex questions. Under California law, the discretion to the court is just to look to the general objectives of sentencing. It's entirely open-ended and subjective. Washington is much more straightforward. It is a list of 30 yes or no questions, most of which are only applicable to certain crimes. And it would not be too much to ask a district court to run through those in situations such as this. I would like to just give an illustrative example of someone who was charged with and convicted of a Washington state crime and had a Washington state guideline range of 12 months or less. Let's say he's a grade category 6 criminal history. His federal revocation sentence would be 8 to 14 months. If the court instead just looked to the Washington statutory maximum, it would be a grade A or B violation, meaning his guideline range would be 21 to 27 or even 33 to 41 months. And it cannot be that someone who was never even charged with a crime could face a revocation sentence of 3 1⁄2 years, while someone who was actually convicted, someone in the exact same position, exact same conduct, but was actually convicted, would only face a few months federal time. And with that, unless there are any questions, I would conclude. Thank you, Your Honors. Thank you, Counsel. I hear no questions from my colleagues, therefore. We're going to thank Mr. Goddard and Ms. Rales for their excellent arguments. And the case of the United States of America v. Williams shall now be submitted.
judges: Gould, Clifton, Miller